IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**RICHARD MATTHEWS, etc.**

      **Plaintiff,**

v.                                                                                            CV 10-HGD-287-S

**AT&T OPERATIONS, INC.,**
et al

      **Defendants.**

## MEMORANDUM OPINION

This cause comes on to be heard on the objection of the plaintiff to the Report and Recommendation ("R&R") of the magistrate judge filed on December 10, 2010. The issue is whether the defendants' motion to compel arbitration should be granted.

The issue revolves around the following language in the Residential Services Agreement ("RSA") referenced in the R&R:

> AT&T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:
>
> • claims arising out of or relating *to any aspect of the relationship between us*, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory;
>
> • claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising);
>
> • claims that are currently the subject of purported class litigation in which you are not a member of a certified class; and
>
> • claims that may arise after the termination of this Agreement.
>
> In this Section, references to "AT&T", "you", and "us" include our respective

>subsidiaries, affiliates, agents, officers, employees, predecessors in interest, successors and assigns, as well as all authorized or unauthorized users or beneficiaries of services or equipment under this or prior Agreements between us. . . . This arbitration provision shall survive termination of this Agreement.

(Doc. 25-1, § 9a (some emphasis in original)).

Although the plaintiff argues that the RSA is inapplicable to this dispute, he states the following in his objection:

(1) "There was then change of service that affected the related RSA, ... ;

(2) "AT&T created a contract that *in one sense was broad and far reaching* so as to allow it to commit tortious and criminal acts with impunity... ." The fact that an available remedy may be limited to arbitration does not mean that there can be violations (alleged) with impunity.

This court will adopt and apply the R&R and will not address all of its discussion. This court does further note:

The Alabama Supreme Court has repeatedly stated that the words "relating to in the arbitration context are given a broad construction." *StoneMor Ala., LLC v. Summers*, 36 So.3d 5, 8 (Ala. 2009) (internal quotation marks and citations omitted). On the other hand, "the phrase 'arising under' in an arbitration agreement contemplates a narrow scope of operation." *Cato*, 968 So. 2d at 7 (citing *Koullas v. Ramsey*, 683 So. 2d 415, 416 (Ala. 1996)). The RSA's arbitration provision applies to "claims arising out of . .. **any aspect of the relationship between us**," which is in addition to the provision's inclusion of the term "relating to." (Doc. 25-1, § 9a (emphasis added.))

All defendants invoke the terms of the arbitration agreement; that is (1) BellSouth Telecommunications, Inc. d/b/a AT&T Alabama; (2) AT&T Operations, Inc.; and (3) Innotrac Corporation. BellSouth was the signatory to the RSA and therefore may clearly invoke the

arbitration agreement. Defendants argue that the arbitration agreement explicitly provides that defendants AT&T Operations and Innotrac were intended to be included. In particular, they argue that defendant AT&T Operations is an "affiliate" and defendant Innotrac is an "agent," and that the two would squarely fall within the definitions as used in the arbitration provision. (*See* Doc. 25-1, § 9a ("In this Section, references to 'AT&T', 'you', and 'us' include our respective subsidiaries, affiliates, agents . . . .")).

> In interpreting an arbitration provision, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, ***whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability***. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L.Ed. 2d 765 (1983) (emphasis added; footnote omitted). Thus, a motion to compel arbitration should not be denied unless it may be said with ***positive assurance*** that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960).

*Olshan Found. Repair Co. v. Schultz*, No. 1090800, 2010 Ala. LEXIS 200, at *14 (Ala. Oct. 15, 2010) (internal quotation marks omitted) (quoting *Elizabeth Homes, L.L.C. v. Cato*, 968 So. 2d 1, 7 (Ala. 2007)).

In this case, the arbitration agreement provides: "AT&T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes . . . claims arising out of or relating to any aspect of the relationship between us . . . ." (Doc. 25-1, § 9a (emphasis in original)). Such an agreement to arbitrate is quite similar to one addressed by the Alabama Supreme Court in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jordan* which applied to "all controversies which may arise between us . . . ." 719 So. 2d 201, 202 (Ala. 1998). As to the scope of that provision, the Alabama Supreme Court held:

> The . . . agreement contains a broadly worded arbitration clause that is clear on its face–it covers "any" and "all" controversies that may arise between [the parties]–and, like unambiguous statutes, it leaves no room for interpretation. . . .
>
> . . . .
>
> . . . [W]e conclude that the language of the arbitration provision in the . . . agreement entered into between [the parties] is sufficiently broad to include ***any*** and ***all*** controversies between them, regardless of the kind of controversy or the date on which the controversy occurred.

Finally, Alabama courts have consistently followed the following unconscionability standard:

> This Court has stated that "'[a]n unconscionable . . . contractual provision is defined as a . . . provision "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other."'" *Southern United Fire Ins. Co. v. Howard*, 775 So. 2d 156, 163 (Ala. 2000) (quoting *Layne v. Garner*, 612 So. 2d 404, 408 (Ala. 1992), quoting in turn *Lloyd v. Service Corp. of Alabama*, 453 So. 2d 735, 739 (Ala. 1984), and *Hume v. United States*, 132 U.S. 406, 410, 33 L. Ed. 393, 10 S. Ct. 134 (1889)). . . .

*Blue Cross Blue Shield of Ala. v. Rigas*, 923 So. 2d 1077, 1086 (Ala. 2005). That definition does not fit here.

This court will overrule the objection.[1]

This the 9th day of February, 2011.

_____
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[1] *Compare Jenkins v. First Am. Cash Advance of GA., LLC*, 400 F.3d 868, 877-78 (11th Cir. 2005).